ORIGINAL

2007R00373/SBK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA          :          Hon.

      v.                                :          Criminal No. 09-528 (JHR)

JOHN W. MANNING,                  :          18 U.S.C. § 1343
  a/k/a "Jack Manning"                       18 U.S.C. § 2


INFORMATION

    The defendant having waived in open court prosecution by

indictment, the Acting United States Attorney for the District of

New Jersey charges:

    1.    At all times relevant to this Information:

        a.    Between in or about 1983 and in or about February

2009, defendant John W. Manning, a/k/a "Jack Manning"

(hereinafter "defendant Manning"), was the president of an Essex

County, New Jersey company that leased cars, trucks, and other

equipment to local and regional customers ("Company A").

        b.    As president of Company A, defendant Manning had

the authority to buy motor vehicles on Company A's behalf and to

lease them to Company A's customers.  Defendant Manning also

supervised Company A employees who obtained vehicle titles and

insurance in connection with the leases.

        c.    "Sale and Leaseback Transactions" were a form of

financing in which a borrower sells equipment that it already

owns to a lender, which then leases the equipment back to the

borrower in exchange for the borrower's agreement to pay back the cost of the equipment, plus a percentage mark-up, over a term of years. The transaction benefits the borrower, which maintains possession of the equipment and receives 100 percent of the equipment's value in cash. The transaction also benefits the lender, which receives a guaranteed stream of lease payments that includes the percentage mark-up.

2.    Between at least as early as July 2004 and in or about February 2009, in Essex County, in the District of New Jersey, and elsewhere, defendant

JOHN W. MANNING,
"a/k/a Jack Manning"

did knowingly devise and intend to devise a scheme and artifice to defraud Company A and to obtain money and property from Company A by means of materially false and fraudulent pretenses, representations, and promises, which scheme and artifice to defraud was in substance as set forth below.


OBJECT OF THE SCHEME AND ARTIFICE TO DEFRAUD

3.    It was the object of the scheme and artifice to defraud for defendant Manning to embezzle millions of dollars from his employer for personal gain by causing Company A to enter into fictitious Sale and Leaseback Transactions for equipment that did not exist with a company that had never agreed to enter into such transactions.

## MANNER AND MEANS OF THE SCHEME AND ARTIFICE TO DEFRAUD

4.     It was part of the scheme and artifice to defraud that, beginning in or about July 2004, defendant Manning presented a purported business opportunity to Company A officials involving Utility B, a multi-national utility company that was one of Company A's and defendant Manning's largest customers. Specifically, defendant Manning proposed that Company A enter into Sale and Leaseback Transactions with Utility B, which, according to Manning, owned construction equipment that it wished to finance.

5.     It was further part of the scheme and artifice to defraud that defendant Manning had, in fact, never spoken to anyone at Utility B concerning possible Sale and Leaseback Transactions.

6.     It was further part of the scheme and artifice to defraud that, after convincing Company A officials to engage in the fictitious Sale and Leaseback Transactions, defendant Manning secretly established several corporations and bank accounts in names that were deceptively similar to those of Utility B and its parent and subsidiary companies, such as "Utility B Management" and "Utility B-[International Location]" (hereinafter "the Fake Subsidiaries").

7.     It was further part of the scheme and artifice to

defraud that defendant Manning created fraudulent documents purporting to show that Utility B had purchased the equipment to be sold and leased in the Sale Leaseback Transactions – including purchase orders, bills of sale, and lease agreements – and provided those fraudulent documents to Company A.

8.    It was further part of the scheme and artifice to defraud that the equipment Company A was supposed to purchase as part of the Sale Leaseback Transactions did not exist.

9.    It was further part of the scheme and artifice to defraud that defendant Manning funded the purported Sale Leaseback Transactions by causing Company A to issue checks payable to the Fake Subsidiaries, which defendant Manning then deposited into accounts that he controlled in the names of Fake Subsidiaries, including "Utility B Management" and "Utility B-[International Location]."

10.    It was further part of the scheme and artifice to defraud that, in order to conceal the fraudulent scheme from Company A officials, defendant Manning used some of the Company A money that he had transferred to the Fake Subsidiaries to make scheduled payments back to Company A on the Sale Leaseback Transactions ("the Ponzi Payments"). Because defendant Manning made the Ponzi Payments in a timely manner from a bank account that appeared to be controlled by Utility B, Company A officials had no reason to suspect that the fictitious Sale Leaseback

11.  It was further part of the scheme and artifice to defraud that, in order to conceal the fraudulent scheme from Company A officials, defendant Manning interfered with Company A external audits that would have revealed that Utility B did not have any of the equipment purportedly covered by the Sale Leaseback Transactions.  Specifically, defendant Manning intercepted audit questionnaires that required Utility B officials to certify the existence of leased equipment and forged the signature of Utility B's president before returning the questionnaires to Company A's external auditors.

12.  It was further part of the scheme and artifice to defraud that, between in or about July 2004 and in or about February 2009, defendant Manning caused Company A to transfer to the Fake Subsidiaries approximately $8.2 million in connection with the purported Sale Leaseback Transactions ("the Embezzled Funds").  As a result of these purported transactions, Company A also paid approximately $359,000 in sales tax to New Jersey authorities.

13.  It was further part of the scheme and artifice to defraud that defendant Manning kept approximately $5.8 million of the Embezzled Funds, while returning to Company A approximately $2.4 million in the form of the Ponzi Payments.

14.  It was further part of the scheme and artifice to defraud that defendant Manning concealed the scheme by wiring

Embezzled Funds through multiple bank accounts that he controlled.

15.   As a result of the scheme and artifice to defraud, Manning spent approximately $1,000,000 in Embezzled Funds by purchasing, renovating, and operating a Union County, New Jersey restaurant.

16.   As a result of the scheme and artifice to defraud, Manning spent approximately $800,000 in Embezzled Funds by purchasing and renovating real estate, including a beachfront condominium in Sarasota County, Florida and two luxury time-share interests in the United States Virgin Islands.

17.   As a result of the scheme and artifice to defraud, defendant Manning spent additional Embezzled Funds on personal expenditures that included, among other things, chartered airplane and limousine travel, jewelry, luxury goods, and fine dining.

18.   On or about June 30, 2008, for the purpose of executing and attempting to execute the above scheme and artifice to defraud, defendant

JOHN W. MANNING,
a/k/a "Jack Manning"

did knowingly and with fraudulent intent transmit and cause to be transmitted certain writings, signs, signals, pictures and sounds in interstate commerce, namely, a wire transfer in the amount of approximately $30,000, for the purpose of executing such scheme and artifice to defraud.

In violation of Title 18, United States Code, Section 1343 and Title 18 and Section 2.

RALPH J. MARRA, JR.
Acting United States Attorney

CASE NUMBER: _____

# United States District Court
## District of New Jersey

UNITED STATES OF AMERICA

v.

JOHN W. MANNING
a/k/a "Jack Manning"

# INFORMATION FOR

18 U.S.C. § 1348
18 U.S.C. § 2

RALPH J. MARRA, JR.
*ACTING U.S. ATTORNEY*
*NEWARK, NEW JERSEY*

SETH B. KOSTO
*ASSISTANT U.S. ATTORNEYS*
*(973) 645-2737*

USA-48AD 8  2009R00373
(Ed. 1/97)